All right, we are about to hear United States v. Underwood, and Mr. Wise? May it please the court. To convict a person under an 18666 violation, the government must establish agency. The government indicted the defendants in this case as employees of Chester County. They tried the case as if the defendants were employees of Chester County. While that may be true in some states, it is not true in South Carolina and never has been. The sheriff's office is a completely independent agency and is not an employee of the county. Could an employee of one entity also be an agent of another entity? It could be, but there's no evidence in this case to establish that. Well, that I think might be the issue. For example, there was some testimony in the trial about the sheriff buying a truck or leasing a truck. If he did that, the only entity the sheriff could obligate when he went to buy that truck was the sheriff's office. He couldn't obligate county funds for that. He can only allocate funds out of his budget. All the county does in this case is act as a holder of funds for the sheriff. That's the way it works. They have no control over the sheriff. Sheriff cannot buy in the county. Sheriff's employees are employees of the sheriff's department, not the county. Who held the funds for where the cars, stopping the vehicles, car checks? Well, the car checks, that money came from the Hazel Fentman Center to the sheriff's department. To the sheriff's department. Right. And there's some dispute as to whether that was proper or not, but that's beside the point for this case. So the agency argument doesn't apply to the traffic stop? No. No, that's a totally different issue. That's a money laundering issue which is totally different. The 666 issue deals with the agency requirement, and it's simply not there. A person is not an agent simply because you delegate the authority to another person to pay you money. I could, if I wanted to, designate any individual to pay all my bills. I don't want to mess with them. That does not make me their agent or anything close to that. So it's simply not there. So if we accepted your agency argument, which of these charges do you say that affects? Say that again? If we were to accept your agency argument, which of the charges do you say that affects? That affects just the 866 violation, the only one. The others are totally independent of that on that particular issue. The government says that we have gone beyond the record in citing state law to establish that a sheriff's office is totally independent of the county itself. That's the law of the case. That is the law. We certainly don't go beyond the record by citing the appropriate law to justify the lack of agency in this particular case. As no defendant is an agent of the county, there can be no 666 violation in this particular case. The wrongful arrest case we also feel should be overturned. Probable cause really existed for the rest in this particular case. The government news brief tends to make the chaotic scene of that night less chaotic than it really was. Here you have in darkness a scene where there has been a wreck. There was a roadblock set up originally. You have a helicopter land in another place. You have the individual that caused the wreck on the loose, and you don't know where he is. You don't know if he's armed or not armed. I think it's fair to assume for this particular charge, this boils down to deprivation of rights of the gentleman they arrested. Is that what that covers? It boils down to a willful deprivation of rights. Right, right, right. Correct. So if we concluded from, say, watching the video that you really couldn't tell what was going on, is that sufficient for you to prevail? I think it is, because it doesn't meet the Jackson versus Virginia case of, you know, And if you've got to look at the facts under the sheriff's perspective, not with Monday Morning Quarterback, but at the time of this incident, he had a young African-American male walking in his yard, at times walking out of the yard, when what they were looking for was a young African-American male. So even if he's walking in his yard, someone down the road, some deputy coming by, could perceive that's the suspect. So for the sheriff to tell Mr. Simpson, just stay on your porch, was a very reasonable request under the circumstances. But Mr. Simpson elected not to do that. Whether he got in the road is, you know, frankly debatable. How far he went, where the road begins and ends, we don't know, for sure, based on this record. So when Mr. Simpson goes out there and then goes beyond the fence, if he had started walking out in the road, some deputy 100 yards away could have seen him, believed him to be the suspect, and unfortunately made it more tragic than it turned out to be. So clearly I think Mr. Simpson's actions tended to hinder the investigation they were engaging in. And under the common law obstruction of justice, simply hindering the investigation is enough to justify a conviction. Now, as to Mr. Neal, the record clearly establishes that Mr. Neal knew nothing of what was going on between Sheriff Underwood and Mr. Simpson. He came to the scene late. He came to the scene after the video ended. All he did was follow the order of his superior, put the cuffs on him. And he did. This court cannot afford to tell deputies you need to question a direct order from a superior because if you don't question it, you could go to jail for wrongful arrest. That's just simply not a good policy. Mr. Neal had the right to assume that he was operating in good faith. That would certainly protect him under a civil suit. The government contends that our cases involving civil litigation aren't applicable to this case. Well, they are because you can't have the weird situation of someone being convicted criminally of wrongful arrest, and yet you turn right around and have a civil suit against them, and you can't win on the civil suit because of qualified immunity. So the qualified immunity standard shouldn't be looked at in this particular case. And the reason is the qualified immunity standard simply takes out the willfulness of a wrongful arrest. It means that the officer was operating in good faith, and if he was operating in good faith, it can't be a willful violation. So we think the conviction of Mr. Neal, even if for some reason the conviction of Sheriff Underwood is upheld, should be reversed. The other conviction they had in this case was the charge of basically involving obstruction of justice or filling out false reports to hinder an investigation. Our first point is nothing that was done by Mr. Sprouse or Mr. Neal hindered an investigation one iota. Mr. Neal simply wrote out an incident report after the fact. That incident report was written based upon what he had been told. It was clearly not written based upon the facts of this case, upon his personal observation, because he was not there. That seemed to be clearly established. You can never be convicted of this particular crime if you simply fill out a report based upon what you were told. That would not qualify as a false report. It may qualify as an inaccurate report, but an inaccurate report is not what violates the particular statute. Was there evidence in the record as to what the process for preparing a report was? What was the normal process the sheriff's office had? The normal process was to prepare one promptly. There's no question about that. This was not prepared promptly. No, it wasn't. My question really is going to the fact, I think you make a good point about Mr. Sprouse being told, but it seems like there may have been more to it than that because after the FBI called, there had to be some discussions between Sheriff Underwood and Sprouse about the fact I need a report and this, this, this. I mean, in other words, it's a backfill trying to exculpate Underwood from the implication that there's already a suggestion he had acted improperly. Well, there's no question the report should have been sued on. We never. Not just the timing. The timing shows a backfilling. I don't think the timing shows anything sinister, nor do I think the timing shows anything about a false report. So even if it's months later as it was in this case, you still have to say, was the report false first? And if it's false, did it materially mislead the investigators in this case? The investigators, when they started the investigation, had that videotaped. That is all they really needed to investigate it. How was the question of agency put to the jury? It was very vaguely put to the jury, to be frank with you. I don't think it really, the government contends. Did you make any objection to the instructions? Well, no counsel involved in this appeal tried the case. There was no objection made to the instructions. What I'm concerned about is your argument seems to overlook the role that the jury played with respect to this case. Because hold on a minute. The jury found that this was a corrupt outfit, essentially, through and through. They're getting money, federal money, I guess, that's being used by the sheriff to have his employees build a barn for his personal use. And the sheriff is skimming off money that is due to the employees. And when they were working checkpoints, and that was their money, it wasn't his. But he was skimming and depriving his own employees of that money and putting his own employees in a position where they were doing a lot of things that were purely for his personal benefit, such as building a barn. And there was a jury that looked into this case. The trial took a number of days, and the conclusions that the jury drew were decidedly unfavorable to your side of the story, which you're presenting to us today. I didn't understand what the problem was on the agency thing, as long as the purpose of the statute is considered of 866, which is, did they have the authority to act on the county's behalf? And it's not clear to me that they lacked authority to act on the county's behalf, because when they obtained county purchase orders for procurement, it required county approval for travel. They obligated county funds when they obtained county purchase orders for procurement, and they obligated county funds when they spent money. I don't understand why that doesn't put them in an agency relationship, as 866 defined it. Whether it is an agency relationship in the abstract, I'm not sure, but when you look at the statute and you look at the statutory purpose, which is to safeguard federal funds and the kind of siphoning off and misuse of federal funds, I'm not sure why this isn't an 866 violation. The whole idea of 866 is to safeguard federal funds and make sure that the beneficiaries don't squander those federal funds in the way that the beneficiaries did here. And given the fact that the sheriff's office was authorized to obligate the county in all kinds of ways, I don't know why they aren't an agent for purposes of 866. Now, if we were looking at this as a matter of agency common law, maybe, maybe not. You would draw a different conclusion. But looking at it under the statutory definition, whether the authorization existed or not, they can obligate federal funds in all kinds of ways, which seems to me to feed into that basic purpose of 866, which was not to throw federal money around for one's personal benefit and to squander taxpayer dollars in the way that these people went about doing here. And you can't overlook the fact that this jury heard a lot of evidence about what this sheriff's department was up to. And in ways large and small, it is corrupt through and through. That's the jury's determination. To go to the first issue you raised, how was the agency issue presented to the jury? We contend that as a matter of law, there's no agency. So there was no issue for the jury to decide once it's established that the sheriff is independent of the county. Secondly, the sheriff has. There's no dispute of fact, is there, that the sheriff's office had the obligation, had the authority to obligate all kinds of federal funds? That's not correct. There were no federal funds ever given to the sheriff's office, nor was there any testimony that the sheriff ever received any federal funds. The question is whether it was authorized to act on the county's behalf. That is a person, the definition is in 666D1, where an agent is a person authorized to act on behalf of a government and includes a servant or employee and a partner, director, officer, manager, and representative. Now that's a pretty broad statutory definition. And it's a pretty inclusive statutory definition. And just in terms of the statute and its purpose and what was done here and the county's ability to obligate federal funds, to obligate county funds, the sheriff's ability to obligate county funds in a variety of ways. I'm not sure why there isn't an agency relationship as the statute defines it. The sheriff has zero ability to allocate county funds. The sheriff has all the ability to obligate county funds. He does not. He only has ability to spend money in his budget, which is set aside. The county collects taxpayers' money, some of which, by South Carolina law, they are obligated to give to the sheriff to run his office, some of which goes to the county. The sheriff's office has no discretion when it obtains purchase orders for procurement? That's correct. It has no discretion as far as obligating the county funds. He has all the discretion to obligate the money allocated to the sheriff's department. But in terms of the orders of procurement that the sheriff's office signs, the sheriff's office is the one that makes out those orders of procurement. And if it does, the county is obligated to pay them. Well, no, the county is not obligated to pay a dime. The county is only obligated to pay what's in the sheriff's budget, which they have allocated previously. That's why I say the sheriff has no ability to go out in the community of Chester, charge a truck to the county of Chester, and make the county of Chester pay for it. If he did that, the dealership would then sue the sheriff's department, not the county of Chester. So they are two very distinct entities. All the county of Chester really does is disperse money allocated to the sheriff's department. And that's why he has no ability to bind the county or spend the county money. I have one quick question. Judge Agee has a question. Before we got back on the agency point, you were discussing the falsification of records. And I take it for both Neal and Sprouse, the government's argument is they omitted a fact. Sprouse didn't say he took a cell phone, for instance. Is it your position that nothing in the reports were false, and therefore there's no basis to convict, or that there could have been a falsehood by omission, but it was not material? It's a combination of both. As to Neal, nothing was false. As to Sprouse, he didn't mention the cell phone, agreed, but no one disputed. I mean, that was not a big issue. The cell phone was sitting on one officer's desk for months. So everybody kind of knew the cell phone was there. So it's a combination of both. And if you're going to have an omission, as we pointed out in our brief, if you're going to have an omission, it has to be material, I believe, or at least this court should say that's what is required, because if it's not a material matter, any little petty thing could be omitted from an incident report, and the government could deem that to be a false report. But you don't challenge in this appeal the separate charges for false statements. We don't challenge. There are separate convictions, I think, for making false statements. Correct. But that's not an issue here. Well, it isn't. Well, back up. That was a conviction of Mr. Sprouse for making a false statement. Right. We've not disputed that. That was my only question. Yeah, that's correct. The report itself, we don't think, hindered the investigation. That's a different charge. Right. Thank you. I feel like sometimes in being treated to, in these cases, is a shell game, where you have a local bureaucracy. One aspect of it says, oh, this is all the county's problem. This isn't ours. This isn't the county's. This isn't all the government saying no. The sheriff's department is obligating family funds. But you get the feeling that what's going on is some sort of shell game. And at any rate, you've got some rebuttal time. I know. And to be frank with you, it's less of a shell game if someone had left it up to the voters of Chester County to vote the sheriff out if they deemed his actions to be inappropriate. Thank you. Thank you. Counsel, let's hear your side of it. Good morning, Your Honors. May it please the Court. Sonya Ralston for the United States. On the 666 charge, the question of agency was put to the jury. The jury instructions are found at Joint Appendix 2772 and recited the statutory language that Judge Wilkinson previously read. Defendants made no argument to the jury that agency was lacking. The testimony in the record supports the jury's agency finding. So does this mean they waived the argument? If there was no objection and no argument, what's our standard for this? This Court has alternatively said that such arguments are waived or reviewed for plain error. I think the appropriate standard under the Supreme Court's more recent clarifications of the difference between waiver and forfeiture is that the argument is forfeited and reviewed only for plain error. Is it up here on plain error? Yes, Your Honor. Okay. So the agency question was argued before the jury and submitted to the jury? It was instructed to the jury, Your Honor. It was not argued by really by either party. It was not at issue. And the instruction read? The instruction quoted the statute. When authorized to act on behalf of a government includes a servant or employee and a partner, director, officer, manager, or representative. Mr. Underwood's fine argument was interesting to me, but it ignored a key component of all this, which was that we had an extended trial here, and the jury drew a conclusion about the operations of this department, and it really doesn't pass a smell test. I can't believe that a sheriff would, well, obviously they did, but that a sheriff would conscript employees to build a barn for his personal benefit, and that it would take employees' money, their hard-earned money, and attempt to skim it off for him and his very top deputies, and deprive those people who are working for him of what they're entitled to earn. And it's very disappointing. And in the meantime, he's not only depriving his employees of money, but he's depriving taxpayers and squandering their funds as well. And it's just bad. I agree, Your Honor, and as did the jury. And if I could just highlight for the court some of the testimony before the jury that supports the agency finding. Well, before you do that, I just want to be sure your understanding is no objection to the jury instructions, and no argument to the jury on the issue of agency. Oh, and, Your Honor, not raised in either the mid-trial, post-trial, or post-post-trial 22. Not recited to you. Is that correct? Yes. Okay. Yes, they did not object to the jury instruction, they did not argue it to the jury, and they didn't raise it in their Rule 29 motions. The testimony of the county treasurer, I would point out at page 840 of the joint appendix, he calls the truck that my counsel talked about a county vehicle. He talks about the body-worn camera lease that the sheriff executed a contract without authorization. He says it's a multi-year lease that obligated the county for more than one year, and because it was done without prior approval, they had to go back to the county after the fact and get approval. That's at 814. They admit in the reply brief that the county appropriates the funds for the sheriff's office. That's at page 13 to 14 of the reply brief. The county controls the bank accounts at 805. They paid the sheriff's office employees at 807. The treasurer at one point had to alert merchants not to pay requests from the sheriff's office without the county purchase order because they were violating the policies and obligating the county to pay money without authorization, and that's at 816. Mr. Underwood was arguing, I mean, not Mr. Underwood, your opposing counsel was arguing that the jury was somehow obligated to find in the instructions that the jury was somehow obligated to find an agency relationship as a matter of law. Is that correct? I understand their argument to be that the court should have precluded this question from going to the jury because the lack of agency as a matter of law is so clear. But the jury was not instructed as a matter of law that there was an agency relationship or anything. No, Your Honor, the jury was given the statutory definition as one of the elements of the crime that it had to find. The jury had to find the elements of that crime. In order to convict, yes, Your Honor. There was no motion in limine to bar the instruction from the jury. There was not. This issue really, Your Honor, the first time it shows up in this case is in their opening brief on appeal. They never contested that they were agents below. This just was not an issue. And I would point out that the indictment at page 71 of the joint appendix indicts them for being agents of a local government, not for being employees. So I don't think this court has to find that they're employees in order to affirm here. As long as they are agents within the broad definition of 666D1, which I think evidences clearly Congress's intent to cover the landscape. The definition of agency in section 666 is really broad. Yes, Your Honor. And it doesn't seem to me that it necessarily tracks the common law of any particular state as to agency. And Congress is not obliged to adopt the common law of South Carolina on the question of agency. There's a federal definition. It's a federal crime. It's a federal trial. And the controlling definition is that in 666 of agency. And that's a really broad definition. I agree with all of that, Your Honor. That's exactly right. And it's a federal question to be consistent across the country in talking about, as this court said in Pinson, any person who can act on behalf of the organization, the local government. So I think here the evidence clearly supported the jury's finding. And I'd like to address briefly to the extent that South Carolina law is even relevant, even though it's outside the record. South Carolina provision 815-65 discusses the obligation of counties to appropriate money for the sheriffs, but it discusses it in a way that makes clear that it is the county's decision how much money to give to the sheriff and that the counties are in control of that money. Well, what about the sheriff's discretion in procurement, for example? So I didn't give you a look at page 8. The money is provided to the sheriff for the sheriff's office benefit, right? And what is the discretion that the sheriff's office has in terms of procurement that obligates county funds? So at page 816, the treasurer discusses some purchases that the sheriff's office has made, that they made multiple purchases under $700 in an attempt to avoid county purchase order rules. So it seems that there is a kind of like petty cash limit, but they structured these transactions to avoid having to get approval. And so I think there is some discretion, but I don't think the discretion is necessarily dispositive of the agency question, because you could have someone who has the discretion to order pens for an office, but if they go outside the regulations that they've been told to order the most cost-effective option. Are we being treated to something of a shell game here under state law to divert us from the federal definition and the fact that the jury found the elements of the crime? I'm not going to object to that, Your Honor. I think the jury here properly convicted the defendants based on the evidence at trial and that there's absolutely no plain error, no manifest injustice. The crime was submitted to the jury. The elements of the crime were put before the jury. The jury convicted on that count, correct? Yes, Your Honor. And in order to convict, it had to find the elements. That's right. If I could turn to the civil rights charge under Section 242, I'd like to discuss briefly again, I think this goes to the jury's prerogative to find the facts. The video is powerful evidence, I think, but it's not the only evidence in the record. We also had testimony at length from Mr. Simpson. There's testimony from Deputies Graham and Moss about what's going on that evening at the scene and also lengthy testimony from Fire Chief Culp, who was the most proximate person to Mr. Simpson throughout the evening. There's no evidence. Tell me why the video was powerful evidence. So I think the video shows a couple of things. It shows that he's not being disorderly. It shows that he's not out in the middle of the scene interfering with anything. It shows that he's... Well, that's certainly his perception. But I think the relevant inquiry is what were the police officers there in that scene? What would be reasonable for them to have concluded? I mean, it's night. There's a horrific accident. They're having to airlift somebody out. I think it may have been raining. And you've got a fugitive or a convict out running around. And then you have this other gentleman who is out sort of, for lack of a better word, harassing the police. Maybe he's in his yard. Maybe he's not. But it's hard to tell when you look at it exactly where he is or what they would have perceived at the time. So if that's the case, I'm not sure that all the elements are met here. So I guess three or four points there. The first is that, for example, one thing the video is helpful about is that it's clear that it's not raining. The second is that the testimony shows at 1311 to 15 and 1057 at the joint appendix that the manhunt, the search for the fugitive, is going on far away from this property and headed in the other direction. That you can see on the video that he is staying where he is, right? He's in his yard or he's right in front of the fence. He testified, unobjected to and without cross-examination, at 1133 and 1176 that that grassy area is his yard. And I think that... In the middle of the night like that, how are they going to be able to make those sorts of delineations? So I think that... To conclude that this guy is getting out where he can interfere with things. We've got a lot of other things going on. We need to get him away from here. That just doesn't seem unreasonable to me. So I understand. So I think I'd like to clarify two things. There are two potential charges that could be the basis for the probable cause arrest. A disorderly conduct and an obstruction of justice. Whether he's in his yard goes to the disorderly conduct question. Because that has to be like a public disorderly conduct. So like out in the highway. The obstruction question, which I take Your Honor's question to be more aimed at, doesn't have that element. But I point, Your Honor, to the jury instructions at 2260-61 where the court instructs over two paragraphs a definition of probable cause that multiple times invokes the objectively reasonable officer. It discusses evaluating the facts as they were seen by the officer on the scene. And discusses looking at the evidence based on all the circumstances. So this idea that we're not... It talks about not looking at it with 20-20 hindsight. That we're not Monday morning quarterbacking their decisions is baked into the jury's finding here that these officers acted so far outside what a reasonable officer would have done based on the circumstances at the scene. That they're culpable here. So this isn't, I don't think, an issue of just looking at it in the hindsight and like it was a close case but they didn't make it. This is a case where they were given every benefit of the doubt in the jury instructions. And the jury nonetheless concluded beyond a reasonable doubt that there was no evidence supporting this. The jury was instructed on the elements of these South Carolina offenses at 2161-62. The defendants called an expert witness to discuss what's going on here. And I think the primary point about that is that the expert's testimony is based on this hypothetical where the facts given to the expert are greatly exaggerated about what the testimony at trial from Moss, Graham, Simpson, Culp shows was on the ground. So I think that if you look at all of it, the record supports the jury's conclusion beyond a reasonable doubt based on the jury instructions. And there's not a basis to find that this is so far outside of what happened that the jury was acting irrationally in making that conclusion. Can I ask you what is the evidence that implicates Neal? Yes, Your Honor. So I think the most powerful evidence there is his essentially confession later that he would have done the same thing. That he's saying he's not in fact arrested Simpson. That he's not relying on the order from Underwood. He's saying, I think it was right. He's not saying, I thought it was wrong, but I was ordered to do it, so eh. He's saying, I think it was right. And I think if you look at the video, the video, Agent Culp's testimony, or Fire Chief. I looked at the video and I looked at the whole, was it 45 minutes or whatever it is? It was about half an hour, yeah. Half an hour, whatever it was. I looked at the whole thing and I looked at parts of it multiple times. But Underwood's there, but I don't know if I saw Neal. So Neal is, he's not visible like up close in the video because the video stops. But I think if you look, starting at about 2450 in the video, you'll see, and Neal's argument is that he was escorting the victim on the gurney to the helicopter. So you see the gurney go past behind the fire truck over to the helicopter. Yeah, and you saw Underwood with the flashlight walking on the fence side, shining it at Simpson. And then they converge up by the helicopter. The gurney goes on with the EMTs and the officers are there talking. And then, you know, a minute later, Underwood comes back and he's in the driveway talking with Simpson. And it's about a minute and a half after that that the voices start to raise and they get into this more confrontational posture. And that's when the video stops. So I think there's evidence enough from that, from Culp's testimony, that he came closer to help but stopped 15 feet away, even though there's this scuffle going on. I mean, his testimony kind of picks up where the video leaves off. I guess my question is really, I was trying to find out, the disorderly conduct would depend to some degree about the conversation between Underwood and Simpson. And I would think, because there was no real physical, I mean, Simpson's position basically was I'm in the yard and I'm just photographing this. And he made some funny statements like manhunt, manhunt, manhunt, that type of thing. But it would seem to me as if he was rejecting or disrespecting or using foul language and that type of thing, that might have given Underwood more of a case. But Neal would not have been a witness to any of that. Neal would have just been instructed to conduct the arrest. So I want to disagree first on the disorderly conduct and then talk about Neal. So on disorderly conduct, two things. First, it has to be public to be a crime. So at the point at which he's saying manhunt, that kind of thing, he's standing on his porch. Where's Neal? At that point, so that's after Neal has been over, I think that's after the point where Neal has come back from escorting the victim. So he sees the sheriff and Mr. Simpson and they're tussling and whatnot at some point. And so he goes to assist the sheriff. What is his act that, where is his intent to deprive him of his constitutional rights? So it's a reckless disregard is the standard. And I think the reckless disregard comes in two ways. Either that he saw what happened, right, because he's there, and I think you can infer that from the video from Culp's testimony, and that he saw what happened. He knows, he's presumed to know South Carolina law as an officer and that it doesn't arise to the level of probable cause. So I think that's one. The other is that his claim on appeal is that, you know, I wasn't close enough to know anything. And if he wasn't close enough to know anything and he says I would have arrested him anyway, that's worse, right? That's beyond a reckless disregard. It's saying, you know, I'm going to go out and arrest people for no good reason at all. So I think that either way, it's willfulness. Well, I wouldn't arrest him because he's fighting on the porch with the sheriff. That's after the sheriff has started the fight, which I think it's clear that you can, at that point, because under what O'Neill is there close enough to put the handcuffs on, like immediately thereafter, that he would have seen that. And I think. To avoid the charge, what he needed to do was arrest the sheriff. I think he could have done nothing. He could have broken up the fight without arresting anyone. I think he had options. And also, if he genuinely believed that it was wrong, even if he had followed the order, he could have immediately said, I think this is wrong. We shouldn't take him to jail. But instead, he sends him to be booked, to be put on a 24-hour hold, to not complete the police report. You know, I think that the evidence of not doing the police report is consciousness of guilt, right? That if he thought it was legit, he would have written it up right away. And I think this leads, if I could just briefly discuss the 1519 for just a moment. OK. I just like to point out that it's an intent based statute. Their argument is it didn't actually obstruct justice. And that's irrelevant. As long as the defendant intended to obstruct justice, that's enough. And then Neal makes affirmative false statements. And as to Sprouse's omission, materiality isn't an element in the sense that it has to actually be material. But if the defendant, to have the intent, if the defendant believes it to be material, even if he's wrong, right? That's what Yielding says about if you overestimate the importance of your falsified record, you're still guilty, right? It's an intent based statute. So the question is, what did the defendant intend? And I think here, based on the timeline, which if you look at supplemental appendix four is laid out clearly, that they do this after the FBI calls in order to influence the FBI's investigation. So there are two issues here that we've been discussing. One is with respect to the arrest. And another is with respect to the report. And I want to just try to make sure I get your view on each of those. On the arrest, I understand your view to be that the video, as such, showed that he was not interfering with justice in any way, that all he was doing was filming from his own yard. Is that correct? The video plus the testimony of the four witnesses. The video plus the testimony showed that he wasn't attempting to interfere, that he was simply filming the event from his own property. Yes. So does the arrest count? Who does that go against, the sheriff or his top deputies or who? So the 242 count is against Underwood and Neal, but not Sprouse. Sprouse was not present at this point in the evening. And I'd also point out that it has an aiding and abetting component to it. Who actually effectuated the arrest? Neal's the one who handcuffs Simpson. What's that? Neal is the one who handcuffs Simpson. Okay. And who's charged with the arrest count? Neal and Underwood. Neal what? Neal and Underwood. Okay. On the report, again, the three false entries, and Judge Agee brings up the point that there are a lot of police reports that don't represent definitive words on the subject. They simply represent a recollection by the officer of what occurred at the time. And, you know, we all know from jury testimony that two people who witnessed the same event can carry away very different recollections. Without either of those recollections being fraudulent or false. It's just differences of perception. And so why isn't this count with respect to the obstruction of justice, all of which has to do with Simpson's arrest, why isn't this just one of those cases where perceptions can legitimately differ? And anybody that's sat through a trial, you know, people witnessing the exact same chain of events come to very different conclusions about what they saw. And if all of these are going to be used to bludgeon police officers with fraud and false accounts, that's a pretty broad thing. And so what can you do to counter what I thought was Judge Agee's very relevant point and to ease my concern about where this is going? Yes, Your Honor. So first a clarification and then I'll answer your question. So there are three statements in the report, two affirmative false statements by Neal and one omission by Sprouse. Sprouse's omission, I don't think there's any doubt that he knows it's false because that's also the basis of the 1001 in Count 8. As to Neal's affirmative false statements. Is he being punished for the same thing twice? He's not, Your Honor. The charges are different. They have different elements. Section 1519 has a heightened intent requirement. It doesn't require actual materiality. Those are the two key differences. Numerous courts have upheld simultaneous 1001 and 1519. Does this count affect the count of loss of the calculation of loss and restitution? Neither of these counts affects that. Pardon me? Neither the 242 nor the 1519 affects the restitution. So you're saying the loss and restitution calculations are independent of the report and the arrest count? That's correct. They're based on the program theft and the fraud. So those two counts on the arrest and the report, are they self-contained? Yes. They're about a different incident than the rest of the charges. So if I could respond then to just the question about how do we know we're not overreaching. So I think there's two elements of the 1519. It has to be false, which requires knowledge. And then I think there's the intent. The intent requirement is high. It's intent to impede, obstruct, or influence the investigation. And on both of these, the jury was instructed fully, and this was argued by the parties. So I think Your Honor's correct that there are lots of times where there can be innocent mistakes. But here, especially where you have this two-month delay, right, in writing the report, and then this back and forth, back and forth, back and forth over the course of the day when they're writing, editing, changing, printing, showing the report, that I think that this is evident. After the FBI called. Yes, Your Honor. They're coming to look at the report. Yes. Yes. After they requested it from the records custodian and it doesn't exist. So what you're saying is that the elements of falsity and intent on knowing falsity takes this out of the difference of recollection? Yes, Your Honor. And I think that that was his defense, right? His defense at trial was, like, I didn't know. How could I have known? And I didn't know it was false. And so if the jury had believed that, right, if the jury had believed it was an innocent mistake, he was trying his best, he didn't remember, it would have acquitted him. And I think that even if this could have gone either way, on sufficiency review, this court's job is to respect the jury's verdict. So I think there's sufficient evidence here to find the elements of the statute met. And based on that, the jury gets to decide what he intended from the circumstantial evidence. What were the two, you say, two false statements? Yeah, the two false statements were that Simpson was walking back and forth from his yard into the roadway and that he stated that Underwood, Simpson told Underwood to, quote, go look for the F-U, two omitted words, I-N-G, person y'all looking for then, close quote, again, quote, using profane language. And that's, you can find that at, oh, I'm not sure where it is exactly. But it's in the report, 2205. And so the video, I think, conclusively shows that that's not what he said. And I think the testimony also supports that, I mean, he's certainly not into the roadway. He never went into the roadway. You can always see the edge of the grass there. Yeah. Well, they've, you know, I think when the police arrest somebody who's on their own property and isn't, you know, there's no active interference and filming something for your own, on your own property, that kind of goes against probable cause and against a property owner's rights. I mean, you know, his yard is his yard, his home, that's his castle. The other question I have is on all of these counts, a lot of this is an evidentiary quibble, okay? That's the way you see it, and I think fairly. But which of these counts are instructional errors alleged? By and large, the quarrel seems to be with the jury's findings. But are there accusations here that the district judge submitted these different counts under erroneous instructions? And if so, were there objections? Because if the various offenses were submitted under unobjected to instructions, that puts it in the jury's purview. So what do you say as to that? Are instructional errors a part of this appeal? Not as to anything we've discussed today, Your Honor. They make in their opening brief one argument about the jury instruction on the 666 count about the definition of benefits. They admit that this is for plain error review, and the problem they allege — Apart from that, were there — No, that's it. Are there instructional errors that are complained of? No, they haven't complained of any instructional errors. They agreed below to these jury instructions. They haven't challenged them on appeal, and they're correct. For the most part, recite the statutes. That's important. Yes. Yes, I agree. I mean, I think pretty much everything we've talked about today is factual quibbles that were for the jury to decide. The evidence supports the jury's verdicts on all the counts. I think, as Your Honor mentioned before, that there is evidence at this trial that this sheriff's office was corrupt through and through. The jury sat, I don't know, I think six or seven days hearing this evidence from dozens of witnesses. So I think the jury's verdict here should be respected, and we ask — unless there are further questions, we ask the court to affirm across the board. All right, Mr. Wise? To the extent this court looks at this case as a shell game, it's a shell game created by the federal government when they passed this law requiring the agency relationship. In U.S. v. Fisher, the court in essence says if you can't establish an agency relationship and you can allow a prosecution for any fraud by a state official, then you've basically declared the statute unconstitutional. To the extent that this court broadens the definition of agency, you move closer to it being unconstitutional. For example, the state of South Carolina gets millions of dollars every year in federal funds from Medicare and a bunch of other things. Yet because the state receives that money and the state sends some money down to local governments, that doesn't mean every employee of a local government is subject to a federal prosecution. But you have to contend with the agency definition in section 666. I agree. And it's a federal standard, and it was submitted to the jury, and as I have noted, your opposing number says that this wasn't objected to. So if the elements of the crime are submitted to the jury and the jury came through with an 866 conviction, what are we supposed to do with that? You're supposed to reverse it because as a matter of law, as a matter of law, there was no agency by the sheriff and the county of Chester. Pardon me if I say your response comes as no big surprise. But that's the point. We're not talking about a jury charge. We're talking about whether the facts were sufficient to sustain a conviction. And if the government doesn't establish the agency, the facts aren't sufficient. Now, another way of looking at the agency relationship is, you know, as we mentioned, the county gives the sheriff a budget, and the sheriff can only deal with his money. And the procurement laws... I understand the record, and you can correct me, but the sheriff has to, above certain amounts, has to justify and go through the process imposed by the county to disperse those funds. You have raised what would be a great question in state court one day as to what extent can the county tell an elected sheriff how you have to access your money. I don't know... Go through that process? There's no law that really says that. That was the policy. That's how they function. That was the policy of Chester County, yes. The sheriff at times didn't follow it. He didn't get arrested for it. He didn't get fired. I understand. Okay. But the procurement policies are very similar to you have money in the bank. You just can't walk into the bank and say give me my money. They're going to say sign this check. They have a process by which you take money out of the bank. It's basically the same principle. You're not an agent of the bank under those circumstances simply because you comply with their request as to how you get the money out. And in this case, as we mentioned earlier, the sheriff has no ability to obligate any money that belongs to the county as opposed to the sheriff. No, this is you. You keep going with the South Carolina law. That was an old saw that the trial judges presumed to have some knowledge of South Carolina law. We're dealing with a very able trial judge, as you and I would both agree, and Judge Childs. And she's steeped in South Carolina law. And if this relationship was as grand a foul of South Carolina law, she probably would have brought a halt to it. But even the fact that she didn't bring a halt to it, it seems to me that the federal definition here was perfectly reasonable for her to submit the elements of the crime under the federal definition to the jury. Except for the fact that even the most learned jurist sometimes has to be reminded of what the law is. And someone should have reminded her of what the law was in this case. That's a fair statement, but it's offered at a very general level. Well, but it still doesn't change the fact that under the law in South Carolina, there is no agency relationship between the two. You know, we're going round and round the mulberry tree here, I guess, because you put a lot of eggs in the basket of South Carolina law. And I don't want to repeat myself, but I will. It is not South Carolina law that is controlling here. This is a federal definition of agency, and they are federal funds, and it's a federal criminal trial. And so why does South Carolina law just preempt all that? You know, South Carolina law, there's a lot of place for South Carolina law, but I don't know if this is one of them. I don't think it preempts it. I think South Carolina law explains why the sheriff is not under any circumstance. Well, let me rephrase it this way. The South Carolina law explains why a sheriff has no authority to obligate county funds. And if you don't have the authority to obligate county funds, then you don't have the agency under federal law. So I want to conclude, if I may, with just one thought for an issue I didn't get to.  You know, whether they're justified or not justified, that's another issue. But the point I want to make is this. This court read the transcript, and you read a lot about some other actions of the sheriff that really were involved in this conspiracy that pained him as a bad sheriff. To the extent that this court's conclusions of the sheriff Underwood and his sheriff's department is tainted by those other allegations, this court has to consider the extent to which those other allegations tainted the jury in this case. Is this an argument under the 404B? Correct. Well, first of all, I would suggest to you that we're drawing no conclusions about the sheriff ourselves. We're simply respecting the conclusions that it seems to me clear from the trial that the jury itself drew. Now, under the 404B, that fit in well within the exceptions to 404B. It was never introduced. Those prior bad acts were never introduced as propensity evidence. They were fitting within intent and knowledge and the rest, and they bore a pretty germane relationship to what was before the jury. Except I raised the question of knowledge of what, intent to do what. They really were not related to the 666 crime in this particular case, and they certainly weren't related to the allegedly stealing money from the Hazel Pittman Center. I don't know. Going on the trips on funds, using personal funds, these things tended to show his intent to, he stopped people for personal reasons, denied them their liberty interests for personal reasons, and that was the allegation against Simpson. Correct. But they really have no relation to whether or not he was an agent of the county or whether or not there was fraudulence. Skimming and the misuse of funds, building the barn and going on the trip. And also briefly on the Hazel Pittman issue, which we have not discussed much. The judge charged in this case to the jury that the government had to prove the money was stolen from Hazel Pittman. Government didn't do that. There was no testimony in this record by any Hazel Pittman person that they were defrauded of a single dime by Sheriff Underwood with the forms he filled out at any time. May have defrauded fellow workers. That was not the issue before the jury. And you have to go by what was the issue before the jury, not what someone wishes the issue was before the jury. When you add it all up, it's a bad, bad picture. But we still have a process by which, even if it's a bad picture, it has to comply with the law. You had a full jury trial, but when you talk about the skimming and the trips and the barn and the misuse of funds and one thing after another, and the jury wanted to clean up the act in that county because there's a lot of bad, bad stuff going on. But you had your day in court. You argued before your fellow citizens. You had it submitted to the jury. And this trial went on for several days, and the jury didn't like what it heard, and the jury didn't like what it saw. I would just in final note point out that, as the government pointed out, most of the issues we raise here are on plain error. The most important place plain error needs to play in any court is on the directed verdict motion, because that motion can't, you know, government has no interest in having a defendant serve time if the government didn't prove the elements of the crime. So plain error on the directed verdict motion should be considered by this court because of that fact. More so than with the miscibility of evidence. All right. We thank you. We've given you both some extra time here because it was a very well-argued case, and I want to thank you both. It's probably the most extra time I've ever had. I hope everybody's going to really have a happy holiday season. And thank you for coming here, and we will adjourn court until the next morning. I'd like to thank our fine courtroom deputy for her assistance as well. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, G. Steven Agee